UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-20757-CR-MARTINEZ/GOODMAN

UNITED STATES OF AMERICA,

vs.

DAISY MILLER, et. al.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON COUNSEL'S CJA VOUCHER REQUEST FOR ATTORNEY'S FEES

On or about May 6, 2014, court-appointed defense counsel T. Omar Malone ("Counsel") submitted voucher application FLS 12 2559 with appended time sheets requesting $150,711.79 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel supplied detailed time entries and a letter of explanation (the "Letter of Explanation") in support of the application.

On November 2, 2012, Counsel was appointed to represent Defendant Daisy Miller ("Miller") pursuant to the CJA, 18 U.S.C. § 3006A. [ECF No. 67]. Following his appointment, Counsel submitted a proposed litigation budget for his representation of Miller, estimating that the case would cost $89,202.40, with $86,125.00 of that for attorney's fees. [ECF No. 110].

1

Defendant's trial lasted 26 days, beginning May 20, 2013 and concluding on June 28, 2013. Counsel now seeks $150,711.79 in compensation for his representation of Miller. Of that, $149,684.00 is for attorney's fees. The requested amount exceeds the $9,800.00 statutory maximum for attorney's fees in non-capital felony cases at the trial level under the CJA. Guidelines, Vol. 7A, Chapter 2, § 230.23.20. United States District Judge Jose E. Martinez referred the voucher application to the Undersigned for a Report and Recommendation as to whether the requested fees are appropriate. [ECF No. 630].

Having reviewed the voucher and the pertinent portions of the record, the Undersigned **respectfully recommends** that the voucher request be **approved but reduced** in accordance with the opinion below.

I.      CRIMINAL JUSTICE ACT GUIDELINES

The United States Judicial Conference developed the Guidelines for Administering the CJA and Related Statutes (the "Guidelines") to assist courts in applying the provisions of the CJA. *See In re Burger*, 498 U.S. 233, 234 (1991). The CJA plan for the Southern District of Florida explicitly states that "[p]ayment of fees and expenses shall be made in accordance with the provisions of the United States Judicial Conferences guidelines for the administration of the Criminal Justice Act." *See* CJA Plan, Southern District of Florida.

The CJA provides that an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" at the conclusion of

CJA representation. 18 U.S.C. § 3006A(d)(1). The CJA also provides for payment of "expenses reasonably incurred." *Id.* The district court, as the body empowered to "fix" compensation of CJA-appointed Counsel, has the statutory authority and discretion to determine what is a reasonable expense or use of billable time. 18 U.S.C. § 3006A(d)(5); *U.S. v. Griggs*, 240 F.3d 974 (11th Cir. 2001).

To recommend a fee exceeding the statutory maximum, the district court must first certify that the case involves "complex" or "extended" representation. 18 U.S.C. § 3006A(d)(3). The court may find a case "complex" if the "legal or factual issues . . . are unusual, thus requiring more time, skill and effort by the lawyer than would normally be required in an average case." Guidelines, Vol. 7A, Chapter 2, § 230.23.40(b). A case is "extended" if "more time is reasonably required for total processing than the average case." Guidelines, Vol. 7A, Chapter 2, § 230.23.40(c). After certifying that the case is either "complex" or "extended," the district court must determine whether the amount sought is necessary to provide Counsel with fair compensation.

Additionally, the Guidelines recommend case budgeting for cases that require more than 300 attorney hours or $30,000 in attorney's fees. Guidelines, Vol. 7A, Chapter 2, § 230.26.10. In such instances, "counsel should submit a proposed initial litigation budget for court approval, **subject to modification** in light of facts and developments that emerge as the case proceeds." Guidelines, Vol. 7A, Chapter 2, § 230.26.20 (emphasis added). The case budgeting provision for capital cases also states that "[c]ase budgets

3

should be re-evaluated when justified by changed or unexpected circumstances, and should be modified by the court where good cause is shown." Guidelines, Vol. 7A, Chapter 6, § 640.20(f). While the Guidelines *implicitly* endorse the wisdom of modifying the budget due to changed circumstances, there is no **explicit** requirement for submitting modified case budgets.

II.     BACKGROUND

   A. Facts of the Case

Miller was charged by Indictment with Conspiracy to Commit Health Care Fraud and Wire Fraud (Count 1), Wire Fraud (Counts 2-6), Health Care Fraud (Counts 7-8), and Conspiracy to Pay and Receive Kickbacks in connection with a Federal Health Care Benefit Program (Count 9). [ECF No. 3]. The Indictment also charged four co-defendants in the scheme that lasted over a period of nine years. [*Id.*, p. 5, Count 1, ¶ 2]. Miller and her co-defendants were accused of conspiring to pay kickbacks and bribes to patient brokers. [*Id.*, p. 5-6]. In exchange, the brokers referred patients to the defendants' medical centers, allowing them to fraudulently obtain Medicare payments. [*Id.*]. These payments were then used for their own personal benefit. [*Id.*, p. 7]. The Government alleged in the indictment that the scheme resulted in at least $39 million in fraudulent payments to the medical center. [*Id.*, p. 21].

### B. Initial Budget Proposal

Following his appointment, Counsel submitted a proposed litigation budget, estimating the case would cost $89,202.40. [ECF No. 110, p. 3]. The budget proposal was based on Counsel's estimation that he would spend a total of 689 hours on the case. [*Id.*, p. 4]. Counsel's initial budget proposal was broken down as follows: 352 hours directly related to trial and trial preparation, [ECF No. 110-1, p. 2]; 135 hours on discovery, retrieval, organization, and review of documents, [*Id.*]; 70 hours investigating and interviewing witnesses, [*Id.*, p. 3]; 38.5 hours for time related to motions and hearings; and 89 hours for time related to consultations with clients, expert witnesses, prosecutors, and other Counsel. [*Id.*, pp. 3-4].

Counsel spent 4.5 hours preparing the budget. [*Id.*, p. 5]. At a rate of $125 per hour, Counsel's fees were an estimated $86,125.00 (689 hours x $125) [ECF No. 110-1, p. 5]. Guidelines, Vol. 7A, Chapter 2, § 230.16(a) (maximum hourly rate for attorney's services is $125). The remaining $3,077.40 included $427.40 for travel costs, [ECF No. 110-1, p. 4, 110-2, pp. 6-7], $2,000.00 for copying costs and $650.00 for trial aids. [ECF No. 110-2, p. 9].

Counsel submitted the budget *ex parte* with a motion to adopt the proposed budget or set a reasonable budget that would fairly compensate Counsel. [ECF No. 110]. The motion was referred to Magistrate Judge Chris McAliley, who found that the case was complex and recommended that the District Court adopt the proposed budget.

[ECF No. 110]. District Judge Jose E. Martinez adopted the recommendation. [ECF No. 195].

### C. CJA Voucher Request

After completing his representation of Miller, Counsel submitted this CJA voucher request. Counsel's voucher request is significantly greater than the initially approved budget. Counsel seeks $150,711.79 for his representation, $61,509.39 more than the approved budget. Counsel's voucher claimed 192.1 hours for time spent in court and 1005.4 hours for time spent out-of-court, for a total of 1,197.5 hours. He also sought $1,024.29 in travel expenses. Recognizing that this amount is vastly greater than the proposed budget, Counsel submitted a memorandum outlining the reasons for the increase.

Counsel explained that the primary reason for the disparity between the proposed budget and the voucher request is the dramatic increase in the amount of discovery. Counsel predicted he would spend 135 hours on discovery, retrieval, and organization when in fact he actually spent 696.8 hours obtaining and reviewing the records. This led Counsel to spend 508.5 more hours on the case than he initially predicted, an increase of almost 70%. The Undersigned notes that Counsel did not submit a budget modification or any other notice to the Court, as suggested by the Guidelines.

### D. Rationale for Exceeding the Budget

In his Letter of Explanation, Counsel stated that the case took up more time than he reasonably anticipated. (Letter of Explanation at 1). He provides four reasons for the unanticipated increase:

> (1) the Government's discovery in this matter ultimately encompassed more than 600,000 pages of documents (as opposed to the 75,000 pages initially predicted) located at a remote warehouse; (2) the extraordinary number of meetings and conferences between trial Counsel and/or their clients in preparation of joint and distinguishing defenses in this case; (3) the amount of time spent reviewing, and, more importantly, organizing, the documents with and without the client; and (4) the number of conference calls, meetings, e-mails and texts messages with the client and/or her husband, who is also a criminal defense attorney for the Broward County Public Defender's Office.

(Letter of Explanation at 2-3).

### E. Voucher Amount – Administrator's Review

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy. The administrator did not make any changes to the number of in-court hours, verifying Counsel spent 192.1 hours in court at a cost of $24,012.50.

The administrator made two slight changes to Counsel's request for 1005.4 out-of-court hours. Counsel requested two entries of 0.5 hours for time reportedly spent traveling to court on days that there was no court. The two entries amounting to one

hour were subtracted from the total. Thus, the CJA reduced the number of out-of-court hours to 1004.4 at a total cost of $125,550.00.

The CJA administrator also reviewed and verified Counsel's expenses. Counsel claimed $1,024.29 for "Travel Expenses." The administrator subtracted $141.26 for the two days of travel that were incorrectly claimed. Thus, the administrator found that the appropriate amount for "Travel Expenses" was $883.03. Counsel did not list any "Other Expenses." The final amount of the voucher after the CJA administrator's review was $150,445.53.

## III. ANALYSIS

### A. This Case Was Complex

In order to compensate Counsel in an amount that exceeds the statutory maximum, I must first find that this case was either complex or extended. After reviewing the record, there is no doubt that this case was complex. The nature of the case, number of defendants, volume of materials, length of the trial, and extraordinary number of docket entries lead the Undersigned to conclude that the cost of fair representation exceeds the statutory maximum. In a report and recommendation, Magistrate Judge McAliley already determined pre-trial that the case was expected to be extended and complex. District Judge Martinez adopted this report and there is nothing to suggest that events did not unfold as predicted.

B. <u>**In-Court Hours**</u>

Counsel sought compensation for 192.1 in-court hours. The CJA administrator reviewed the request without making changes. Given the length of the trial, I find this amount to be reasonable. I recommend Counsel be paid the full $24,012.50 for his in-court hours.

C. <u>**Out-of-Court Hours and Expenses**</u>

Counsel sought 1005.4 hours for time spent out of court. The CJA administrator reviewed this amount and reduced it by one hour as described above. Given the complex nature of this case, I have no doubt that Counsel spent the amount of time he requests working on this case. Accordingly, I find that all but one of Counsel's time entries are appropriate. On December 4, 2013, Counsel entered 0.5 hours preparing and drafting a notice of unavailability. Considering that neither the local rules nor the Federal Rules of Criminal Procedure allow for such notices, the Undersigned finds that this entry is inappropriate and should be removed. [ECF Nos. 111, 112]. Thus, in the absence of other factors (described below), Counsel should receive $125,487.50 for 1003.9 out-of-court hours.

Having reviewed and noted the administrator's change to Counsel's request for travel expenses, I recommend that those changes be adopted in awarding $883.03 for "Travel Expenses." Thus, Counsel should be compensated $126,370.53 for his out-of-court work in this case.

### D. Rationale for Exceeding the Budget Without Notice

Notwithstanding these findings, I cannot ignore the fact that Counsel did not seek to amend the proposed budget, despite knowing months in advance that the amount of materials to be reviewed increased dramatically. *See* [ECF No. 133, p.1, ¶ 3]. The purpose of the budgeting process is to provide the Court with an estimation of how much CJA money will be needed and to allow the Court to properly evaluate requests for payment in excess of the statutory maximum. The more prudent course would have been for Counsel to update his budget request. Guidelines, Vol. 7A, Chapter 2, § 230.26.20; *See Barrett v. United States*, No. 09-CIV-105-JHP, 2014 WL 3542609, at *14 (E.D. Okla. Aug. 16, 2012) (acknowledging that the court approved a budget modification after counsel exceeded the initially proposed budget).

While the Undersigned recognizes that Counsel was focused on the upcoming trial and may not have realized the extent to which he went over-budget, it would not have been difficult or time consuming to notify the Court or to submit a modification request. Moreover, although Counsel may not have realized the precise number of hours by which he was exceeding the budget, he surely must have realized that the budgeted number of hours had been exceeded and that the excess was significant.

The significant increase of documents that was provided during discovery in this case is exactly the type of unexpected development that should have alerted Counsel to notify the court. If CJA-appointed lawyers could exceed the proposed budget without

10

consequence, then case budgeting would serve no purpose. Reviewing and ruling on budgets would simply be a waste of the Court's time and resources if attorneys could exceed approved budgets without notice or permission and still be paid in full.

It may well be that Magistrate Judge McAliley would have approved a request to upwardly modify the budget based on an unexpected need to review significantly more discovery documents. Likewise, District Judge Martinez may well have approved a report and recommendation that the budget be increased. But we will never know what these judges would have done because Counsel's failure to seek modification to the budget prevented any type of judicial review before the time was incurred. In effect, Counsel's approach here is consistent with the old saying that "it is better to ask for forgiveness than for permission."

Nevertheless, I do not believe that the appropriate sanction for failing to submit a timely budget modification should be the complete loss of fees. Counsel provided an invaluable service in his representation of an indigent client in an extraordinarily complex case. I spoke with Counsel in an effort to determine the circumstances underlying the surprising invoice and I am convinced that he was focused on investigating the case and preparing for trial and did not interrupt his passionate representation with administratively mundane tasks like timely submitting a budget modification request.

Still, despite my view that Counsel did not act in bad faith or intentionally underestimate the budget, there must be *some* consequence for failing to notify the Court of the anticipated budget increase when Counsel knew months in advance of the trial date and realized that the volume of discovery was notably greater than predicted.

In determining whether this fee is appropriate, the Undersigned must balance Counsel's commitment to this case with the failure to modify the proposed budget or otherwise notify the Court. After weighing the equities, the Undersigned finds that a **15% discount of the amount exceeding the budget is an appropriate consequence.**

The difference between the proposed case budget and the adjusted fee claimed in the CJA voucher is $61,180.63; 15% of which is $9,177.09. Thus, the Undersigned recommends that instead of a $61,180.63 increase, Counsel should receive an increase of $52,003.54. When added to the approved budget proposal of $89,202.40, the Undersigned **recommends** that Counsel receive $141,205.94 in fees pursuant to the CJA.

In making this recommendation, the Undersigned recognizes the inherent tension that courts have long dealt with when applying the CJA. "On one hand, representing indigent defendants is a form of public service; thus, [the CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent Counsel." *United States v. Mukhtaar*, No. 06-CR-31(SWK), 2008 WL 2151798, at *2

(S.D.N.Y. May 21, 2008) (citations omitted). The Undersigned believes that this recommendation properly weighs this tension and provides a fair fee for Counsel's services.

In addition, the Undersigned notes that Counsel will now be on notice of the need to timely modify budgets in appropriate CJA cases and has a practical understanding of the consequences of failing to timely submit budget modification requests. Thus, any future omissions by Counsel will be evaluated in a different light.

## IV.   CONCLUSION

The Court appreciates Counsel's commitment, experience, and sacrifice in taking on this complex case. Counsel has consistently demonstrated he is well qualified for the responsibility of representing the indigent. After graduating second in his class and serving as Editor-in-Chief of the Law Review, Counsel clerked for United States District Judge Kenneth M. Hoyt in the Southern District of Texas. He served as an Assistant Federal Public Defender from 1995 to 2004, eventually rising to Supervisory Federal Public Defender. Counsel has also served as a Trial Skills lecturer for the National Institute of Trial Advocacy and sits on the Board of Directors for the Dade County Bar Association, Miami-Dade Justice Association, and the Miami Bridge Youth & Family Services.

Based on his experience and skill level, a lawyer of Counsel's caliber would command an hourly fee in excess of $400 in private practice. Here, Counsel was limited

to $125 an hour. Counsel is a solo practitioner, and it is therefore difficult to imagine he had time to do much meaningful work on any other cases during this time. To the contrary, this case likely consumed Counsel's firm for several months. The Undersigned commends Counsel for his dedication and professionalism in this case and recognizes the significant sacrifice he has made.

For the reasons stated above, the Undersigned **respectfully recommends** that Counsel's fee be discounted by 15% of the amount exceeding the approved budget. Thus, the Undersigned **recommends** that counsel be paid $141,205.94 as fair and final compensation for his work on this case.

In accordance with 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Jose E. Martinez, United States District Judge. Any party may respond to another party's objections within (14) days after being served with the objection. Failure to file timely objections waives a party's right to review issues related to the defendant's plea under Federal Rule of Criminal Procedure 11 before the District Judge or the Court of Appeals (even under a plain error standard). *See* Fed. R. Crim. P. 59(b)(1), (2), *cited in United States v. Lewis*, 492 F.3d 1219, 1222 (11th Cir. 2007) (en banc).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, this 16th day of June, 2014.

1

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE